**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SERGIO POOT,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

**CASE NO.** 5:26-CV-3321-CTS

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**(A 246-057-132)**

## I. INTRODUCTION

On June 16, 2026, Petitioner Sergio Poot ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally* Pet.) The Petition names as Respondents Markwayne Mullin, Secretary, DHS; Rodney S. Scott, Commissioner, United States Customs and Border Protection ("CBP"); Jaime Rios, Acting Field Office Director for Los Angeles, ICE; Eddy Wang, Special Agent in Charge for Los Angeles, Homeland Security Investigations, ICE; Warden of

Adelanto ICE Processing Center; and Does 1 through 10 ("Respondents"). (Pet. 1.[1]) On June 23, 2026, Respondents filed an Answer to the Petition. (Ans., ECF No. 7.) On June 25, 2026, Petitioner filed his Reply. (Rep., ECF No. 8.) For the reasons set forth below, the Court GRANTS the Petition and ORDERS that Petitioner be released immediately.

## II. BACKGROUND

The Petition alleges that Petitioner is a citizen and national of Mexico. (Pet. ¶ 57.) Petitioner has resided in the United States since the early 1990s, is the father of a United States citizen daughter, and has established substantial family, residential, employment, and community ties. (*Id.*) Petitioner's daughter suffers from significant mental health challenges and depends on the support and presence of her father. (*Id.*) Prior to his detention, Petitioner resided openly in the United States. (*Id.* at ¶¶ 58–59.) Respondents do not claim that Petitioner poses a danger to the community or threat to public safety; his continued detention has been based exclusively upon allegations concerning flight risk. (*Id.*)

On or about December 4, 2025, Petitioner was arrested by immigration agents in Lawndale, California. (*Id.* at ¶ 60.) DHS then initiated removal proceedings against him and charged him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (present without having been admitted or paroled). (*Id.* at ¶ 61.) DHS did not charge Petitioner as removable based upon any criminal conviction or allege that he was subject to mandatory detention under 8 U.S.C. § 1226(c) or detention under 8 U.S.C. § 1231. (*Id.* at ¶ 62.)

Initially, immigration authorities took the position that the Immigration Court lacked jurisdiction to consider Petitioner's request for bond. (*Id.* at ¶ 64.) As a

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

result of litigation, Petitioner ultimately received an individualized custody redetermination hearing on December 31, 2025, before Immigration Judge ("IJ") Mullins, who denied bond and continued detention. (*Id.* at ¶¶ 65–67; Ans. Ex. A, ECF No. 7-1 at 2.) At that hearing, IJ Mullins placed the burden on Petitioner to demonstrate that he did not present a risk of flight. (Pet ¶ 68.) Because the custody hearing sought through the federal litigation had been provided, Petitioner's prior habeas proceedings were voluntarily dismissed, and Petitioner remained incarcerated. (*Id.* at ¶ 69.) On April 20, 2026, Petitioner's request for a custody redetermination was denied when IJ Chan held that the Immigration Court did not have jurisdiction to hear Petitioner's bond request. (Ans. Ex. B, ECF No. 7-1 at 5.)

Approximately two months later, after more than six months of continuous detention, Petitioner appeared before IJ Flagg for a subsequent custody redetermination hearing; IJ Flagg stated that DHS bore the burden of justifying Petitioner's continued detention by clear and convincing evidence.[2] (Pet. ¶ 73; ECF No. 13-2, at 4.) This hearing was conducted pursuant to *Rodriguez v. Holder*, No. 2:07-cv-07-3239-TJH-RNB, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part*, *rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d. 1060, 1086 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). (Ans. 2.) In support of detention, DHS alleged that Petitioner posed a flight risk; DHS did not allege that Petitioner was a danger. (Pet. ¶ 73.) During the hearing, IJ Flagg relied on several border encounters occurring in approximately 1998 and 1999 and a history of unauthorized employment. (*Id.* at ¶¶ 74, 78.) Neither DHS nor IJ Flagg identified any evidence that Petitioner had failed to appear for immigration

[2] The Petition alleges that the bond hearing before IJ Flagg occurred on June 15, 2026. (Pet. ¶ 73.) IJ Flagg's order is dated June 18, 2026. (Ans. Ex. C., ECF No. 7-1 at 8–9.) It appears that the hearing was held on June 15 and the associated order issued on June 18. (ECF No. 13, at 2 n.1.) To avoid confusion, the Court will refer to the "June 2026 Bond Hearing."

proceedings, violated any prior order of supervision, attempted to flee from immigration authorities, or concealed his whereabouts from authorities. (*Id.* at ¶ 75.) Nonetheless, IJ Flagg concluded that Petitioner presents a flight risk that no condition or combination of conditions could reasonably mitigate and denied release. (*Id.* at ¶¶ 76–77.) Petitioner has now remained continuously confined for more than six months and his detention continues to cause significant hardship to himself, his family, and his United States citizen daughter. (*Id.* at ¶ 80.) Petitioner has retained counsel, expended considerable financial resources to pursue available forms of relief, appeared for all proceedings, and currently seeks affirmative relief from removal; Petitioner has a pending Application for Cancellation of Removal pursuant to INA § 240A(b) and a pending Application for Asylum and for Withholding of Removal. (*Id.* at ¶ 70.)

The Answer does not set forth substantially different facts, but attaches orders from Petitioner's three bond hearings: (1) IJ Mullin's order dated December 31, 2025 ("Exhibit A"); (2) IJ Chan's order dated April 20, 2026 ("Exhibit B"); and (3) IJ Flagg's order dated June 18, 2026 ("Exhibit C"). (*See* Ans. 2–3; Ans., Exs. A through C, ECF No. 7-1.) On August 7, 2026, pursuant to Court orders (ECF No. 11–12), Respondents filed (ECF No. 13) copies of the transcripts of two of these hearings: (1) the December 31, 2025 hearing (ECF No. 13-1), and (2) the June 2026 Bond Hearing (ECF No. 13-2).

## III. PETITIONER'S CLAIMS

Petitioner challenges his detention on four grounds: (1) Violation of the Fifth Amendment Due Process Clause (substantive) (Pet. ¶¶ 104–20); (2) Violation of the Fifth Amendment Due Process Clause (procedural) (*id.* at ¶¶ 121–36); (3) arbitrary and capricious continued detention (*id.* at ¶¶ 137–51); and (4) "habeas relief is presently available under 28 U.S.C. § 2241 because administrative review is inadequate to remedy Petitioner's ongoing detention" (*id.* at ¶¶ 152–62).

## IV. LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

///

///

///

///

## V. DISCUSSION

### A. <u>The Court Has Jurisdiction To Review the Immigration Judge's June 2026 Denial of Bond for Abuse of Discretion.</u>

The Petition is brought pursuant to 28 U.S.C. § 2241, which extends the writ of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A challenge to a noncitizen's detention is an attack on that detainee's present physical confinement, and thus falls within the "core of habeas" as a cognizable habeas petition. *Doe*, 109 F.4th at 1194; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (noting that the court would have jurisdiction under § 2241 to consider errors of law in immigration proceedings, including due process violations). Thus, courts in this district have found that habeas jurisdiction exists over petitions filed by noncitizens in the custody of ICE. *E.g.*, *<u>Karangolian v. Marin</u>*, No. 5:26-CV-594-WLH (RAO), 2026 WL 1082312, at *2 (C.D. Cal. Apr. 16, 2026) ("Petitioner seeks review of the legality of his detention. . . . Accordingly, as other courts in this Circuit have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241.").

Respondents contend that, "to the extent that Petitioner is challenging his removal order, 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) strip the Court of jurisdiction over the Petition." (Ans. 5.) As an initial matter, Respondents have not provided evidence that Petitioner has a final order of removal against him. Furthermore, the Petition expressly disavows any attempt to challenge a removal order, present or future: "Petitioner does not seek review of a final order of removal. Petitioner does not seek review of the merits of any removability determination. Petitioner does not seek review of any discretionary immigration benefit." (Pet. ¶ 24.) Rather, the Petition challenges only "the legality and constitutionality of [Petitioner's] present physical detention and the procedures utilized to justify his continued confinement." (*Id.*) Thus, the Petition challenges

Petitioner's detention during the pendency of his removal proceedings, but not those proceedings themselves.

In addition, neither of the two statutes cited by Respondents bars the instant challenge. Section 1252(g) states, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). As the Supreme Court has held, Section 1252(g) is narrow. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020). It "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). "There are of course many other decisions or actions that may be part of the deportation process." *Id.* The Supreme Court did not interpret Section 1252(g) "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (Alito, J.) (plurality opinion) (citing *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482–83). As many other courts have found, a challenge to detention during the pendency of removal proceedings is *not* a challenge to the commencement of those removal proceedings, or to the adjudication of a case or execution of a removal order. *See, e.g.*, *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025) (finding that Section 1252(g) was not a jurisdictional bar to foreign nationals challenging detention without bond hearing, "[s]ince petitioners' bond denial claims do not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders"); *Benitez v. Noem*, No. 5:25-cv-02190-RGK-AS, 2025 U.S. Dist. LEXIS 171945, at *7–8 (C.D. Cal. August 26, 2025) (finding that

challenge brought by noncitizens detained pending removal proceedings to continued detention without bond hearings was not barred by Section 1252(g), "[s]ince Petitioners do not challenge the government's decision to commence removal proceedings against them"); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *8 (E.D. Cal. Oct. 16, 2025) ("Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' there are no final removal orders at issue here. The Court is also not reviewing the executive's decision to conduct removal proceedings against Petitioner. Thus, the Court has the jurisdiction to review the authority under which Respondents claim to detain Petitioner as well as whether the detention comports with statutory and constitutional requirements.").

Respondents' reliance on Section 1252(b)(9) is equally unavailing. Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section." Section 1252(a)(5) prescribes the vehicle for judicial review: "[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Respondents argue that an order releasing Petitioner from detention is an effort "to effectively block Petitioner's arrest and detention pursuant to removal proceedings," and therefore is precluded under Section 1252(b)(9), as well as under Section 1252(g). (Ans. 8.) Again, however, Respondents overstate the breadth of what the Supreme Court has held to be a narrow and targeted provision. "Section 1252(b)(9) bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *Regents of the Univ. of California*, 591 U.S. at 19. That section "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order

of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Id.* (quoting *Jennings*, 583 U.S. at 294 (six justices, writing separately, finding that Section 1252(b)(9) does not impact jurisdiction over claims by petitioners challenging detention during immigration proceedings without bond hearings)). Petitioner is "not asking for review of an order of removal, the decision . . . to seek removal, or the process by which . . . removability will be determined." *Regents of the Univ. of California*, 591 U.S. at 19 (internal quotations omitted). Thus, Section 1252(b)(9) does not bar this Court from reviewing Petitioner's claim. *See, e.g.*, *Mosqueda*, 2025 WL 2591530, at *3 (finding that Section 1252(b)(9) was not a jurisdictional bar to foreign nationals challenging detention without bond hearing and noting that "[t]he Supreme Court determined that the 'arising from' language of section 1252(b)(9) should not be interpreted so expansively as to include any action that technically follows the commencement of removal proceedings, because that would bar judicial review of questions of law and fact that are unrelated to the removal proceeding until a final order of removal was issued"); *Benitez*, 2025 U.S. Dist. LEXIS 171945, at *6 (finding that Section 1252(b)(9) does not present jurisdictional bar to noncitizens challenging detention pending removal without bond hearings and noting that "[t]he Supreme Court has held that Section 1252(b)(9) does not present a jurisdictional bar in a case involving a noncitizen's challenge to his continued detention without a bond hearing pending his removal from the United States").

As neither provision asserted by Respondents to strip this Court of jurisdiction over Petitioner's claims actually does so, therefore, this Court finds that it does have jurisdiction to consider Petitioner's challenge to his continued detention during the pendency of his removal proceedings.[3]

[3] The Court notes that Respondents have not asserted that 8 U.S.C. § 1226(e) bars this Court from reviewing the Petition's claims. Because the Court has an obligation to ensure it has jurisdiction, however, it notes that "8 U.S.C. § 1226(e)

**B. <u>Petitioner Was Not Required to Exhaust His Administrative Remedies.</u>**

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, *unless exhaustion is excused*." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (emphasis added). Exhaustion of claims on habeas review under Section 2241 may be excused because, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citing *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018)).

Courts "may require prudential exhaustion when: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Exhaustion may be waived when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.,* 637 F.2d 685, 688 (9th Cir. 1981)). Petitioner bears the burden of "demonstrat[ing] grounds for excusing the exhaustion requirement." *Leonardo*, 646 F.3d at 1161; *see also*

---

does not preclude judicial review of constitutional claims or questions of law." *Heboud v. Blanche*, No. 5:26-CV-03484-KS, 2026 WL 2494985, at *2 (C.D. Cal. Aug. 24, 2026) (citing *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024)). And "[b]ecause the determination of whether a noncitizen is dangerous or a risk of flight for immigration-detention purposes involves a mixed question of law and fact, it is therefore reviewable in habeas proceedings." *Id.* (citing *Martinez*, 124 F.4th at 779).

*Jacinto Chacon v. Mullin*, No. 5:26-CV-03294-RAO, 2026 WL 2127177, at *4 (C.D. Cal. July 21, 2026) ("The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." (quoting *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025))).

Respondents contend that Petitioner has failed to exhaust his administrative remedies because he has bypassed appeal to the Board of Immigration Appeals ("BIA"). (Ans. 11–13.) Petitioner argues that exhaustion should be excused because the BIA lacks the authority to resolve constitutional questions concerning the adequacy of the procedures used, would not materially assist the Court because the record needed to review the IJ's bond decision already exists, and the delay involved in waiting for the BIA to review an appeal would compound and prolong the deprivation of liberty Petitioner has already experienced since last year. (Rep. 8–10.) The Court agrees with Petitioner that the doctrine of prudential exhaustion does not bar his claims.

As another court in this district has recently stated:

> Upon consideration of the *Puga* factors, the Court finds that prudential exhaustion is not required in this case. First, the BIA's expertise in immigration bond decisions is not necessary to decide the legal questions at issue here—whether Petitioner's bond hearing was constitutionally adequate. *See Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 U.S. Dist. LEXIS 79044, at *9 (W.D. Wash. Apr. 10, 2026) (finding the first *Puga* factor weighed against requiring prudential exhaustion because the BIA's expertise was not needed to address the issue of "whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner posed a flight risk"). Second, "waiver of the prudential exhaustion requirement will not 'encourage the deliberate bypass of the administrative scheme,'" and "[a]ny risk of deliberate bypass of administrative procedures is further reduced by the fact that district

> courts will only have jurisdiction in the 'rare case[s]' where future plaintiffs allege a 'colorable' constitutional or legal challenge to the government's procedures." *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (quoting *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Lastly, where the Petition presents constitutional due process concerns, "the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Soriano*, 2026 U.S. Dist. LEXIS 79044, at *10. Therefore, Petitioner was not required to exhaust his administrative remedies before proceeding with his Petition in this Court.

*Heboud*, 2026 WL 2494985, at *3. The Court reaches the same conclusion here, and finds that Petitioner was not required to exhaust his administrative remedies before pursuing his constitutional claims in this Court.

**C. <u>The Immigration Judge's June 2026 Denial of Bond Was an Abuse of Discretion.</u>**

Noncitizens subject to the detention regime of 8 U.S.C. § 1226(a) are entitled to "extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.[4] In addition, in the Central District of California,

---

[4] Respondents contend that the Petition should be denied because "Petitioner acknowledges his detention is permissible under 8 U.S.C. § 1226(a)." (Ans. 5.) Although the detention of some noncitizens under 8 U.S.C. § 1226(a) may be authorized, detention under 8 U.S.C. § 1226(a) is not mandatory, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) ("[D]etention under § 1226(a) is discretionary, allowing the release of aliens on bond pending their removal proceedings."), and the determination of whether a *particular* noncitizen's detention is permissible requires additional analysis.

some noncitizens detained for more than six months are entitled to a bond hearing as a result of an ongoing class action in this district. *See Rodriguez*, 2013 WL 5229795, at *1 ("[T]hose detained under . . . § 1226(a) have a right to a bond hearing after six months of detention."). "Under the preliminary injunction, at the conclusion of each bond hearing, the Immigration Judge ('IJ') shall release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight." *Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013) (internal quotations omitted).

The parties agree that Petitioner has had three bond hearings, the last of which—the June 2026 Bond Hearing—was conducted pursuant to *Rodriguez*.[5] (Ans. 8.) Petitioner argues that, at the June 2026 Bond Hearing, Respondents did not contend that Petitioner was a danger to the community and did not meet their burden to show, by clear and convincing evidence, that Petitioner presented a risk of flight that no reasonable conditions could address—and thus, the IJ's resulting findings were constitutionally inadequate to justify Petitioner's continued detention. (Pet. ¶¶ 107–117.)

An IJ's determination that a detainee poses a danger to the community or a flight risk is a mixed question of law and fact that may be reviewed for abuse of

[5] The *Rodriguez* litigation was commenced nearly 20 years ago and has not yet reached a final conclusion. *See Rodriguez v. Barr*, No. 20-55770, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021) (remanding case to the district court). Note that, after seventeen extensions of the deadline to file a Petition for Panel Rehearing or Rehearing En Banc, the mandate for this remand has not yet issued. *See generally* Docket, *Rodriguez v. Bondi*, No. 20-55770 (9th Cir. filed July 30, 2020). For purposes of this case, it is sufficient to note that Respondents have conceded that the *Rodriguez* injunction governed Petitioner's June 2026 Bond Hearing. (Ans. 2.)

discretion. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (finding that *Wilkinson v. Garland*, 601 U.S. 209 (2024), "compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question"); *see Gonzalez Reyes v. Rios*, No. EDCV 26-3830 JGB (DFM), 2026 WL 2190830, at *3 n.1 (C.D. Cal. July 28, 2026) ("Although *Martinez* involved a dangerousness determination, the same rationale applies to detention decisions based on flight risk."); *Padilla Jimenez v. Mullin*, No. 5:26-CV-03624-MBK, 2026 WL 2076496, at *3 (C.D. Cal. July 15, 2026) (stating that "the same rationale applies to detention decisions based on flight risk").

Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). As one Court in this district recently summarized in finding that an IJ abused his discretion by finding a similar habeas petitioner to be a flight risk:

> An immigration [court] "'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,'" *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)), or "'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).
>
> . . . . To deem a noncitizen a flight risk, the immigration judge must find . . . clear and convincing evidence establishing "an abiding conviction that the truth of [the] factual contentions at issue is highly probable." *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc). This is "a high burden and must be demonstrated in fact, not 'in theory.'" *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)); *see also*

> *Perez v. Wolf*, 445 F. Supp. 3d 275, 287 (N.D. Cal. 2020) (collecting cases applying the "high standard" of "clear and convincing" evidence).

*Gonzalez Reyes*, 2026 WL 2190830, at *4.

The Ninth Circuit has explained that, when determining "whether an alien is a danger to the community or a risk of flight," an IJ may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783; *see also Heboud*, 2026 WL 2494985, at *4 (listing same nine factors and citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

While an IJ has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative," *Martinez*, 124 F.4th at 784, the Ninth Circuit has also explained that an immigration agency "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [the decision]." *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotations omitted).

Here, both at the June 2026 Bond Hearing and in the resulting order, the IJ indicated that Respondents had met their burden to show by clear and convincing evidence that Petitioner posed such a significant flight risk that no bond was

appropriate. (Trans., ECF No. 13-2, at 20; Ans. Ex. C, at 8–9.) The evidence cited in support of this finding consisted of four items: (1) "prior immigration violations"; (2) that the immigration relief sought by Petitioner was "highly speculative"; (3) that Petitioner did not have authorization to work in the United States but had nonetheless "done so for many years" and intended to return to doing so; and (4) that Petitioner lived with his wife, who did not have legal status either. (Trans., ECF No. 13-2, at 19–20.) The IJ concluded that these "factors demonstrate a significant flight risk for which no bond is appropriate." (Ans. Ex. C, at 9.)

The Court finds that the IJ abused his discretion in finding Petitioner a flight risk. What the IJ characterized as "an extensive, repeated, and flagrant pattern of immigration law violations" included nothing in the past 25 years. Petitioner testified that he first came to the United States in 1990, returned to Mexico voluntarily when his mother was dying, in about 2000 or 2001, and then came back to the United States, where he has remained continuously since. (Trans., ECF No. 13-2, at 9–10.) According to the transcript, Respondents presented evidence that Petitioner must have returned to Mexico sometime during the 1990s, as he was encountered at the border and returned to Mexico three times in 1998–99: February 16 and 23, 1998, and June 14, 1999. (Trans., ECF No. 13-2, at 14–15.) Thus, the only evidence presented was that Petitioner entered the country, or tried to do so, several times without permission, with no evidence to suggest he had done even that within the quarter century prior to his detention by ICE on December 4, 2025. In his order, the IJ cited to *Matter of C-M-M-*, 29 I. & N. Dec. 141 (BIA 2025), to support the conclusion that these decades-old encounters demonstrated a significant flight risk. (Ans. Ex. C, at 8.) At the hearing, however, the IJ had acknowledged that *Matter of C-M-M* was distinguishable, as that case involved "a history of immigration law violations, which we do not have in this particular case." (Trans., ECF No. 13-2, at 20.) *See Gonzalez Reyes*, 2026 WL 2190830, at *5 (finding that IJ's reliance on *Matter of C-M-M* was misplaced because the noncitizen in *Matter*

*of C-M-M* had a lengthy criminal history in the U.S., two illegal reentry convictions, had been removed from the country four times since 2001, and had twice lied to immigration officers).

A decades-old history of simply entering the United States without permission, or trying to, has been held to be "legally insufficient to establish a current flight risk that is unmanageable by release on bond." *Id.* (granting petitioner's application for a temporary restraining order on the grounds that IJ abused discretion in denying bond based in part on finding that multiple attempts to enter the United States in the late 1990s made petitioner a flight risk). "[T]he IJ failed to identify why conduct that occurred approximately 25 years ago (or more) suggests Petitioner would be motivated to flee and otherwise not appear at future immigration proceedings." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026); *see also Herrera Ramirez v. Blanche*, No. 5:26-CV-03938-DTB, 2026 WL 2395217, at *10 (C.D. Cal. Aug. 17, 2026) ("As to the finding of 'surreptitious entry into the United States,' the Immigration Judge failed to explain how Petitioner's entry into the United States, 'surreptitious' or otherwise, over ten years ago evidences that he is a flight risk."). As one court put it in evaluating an IJ's denial of bond to a habeas petitioner with a similar background, "[t]he IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee. Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale." *Soriano*, 830 F. Supp. 3d at 1080.

Nor does considering this factor together with the other factors on which the IJ relied allow the Court to conclude that the IJ's decision was not an abuse of discretion. For instance, the evidence presented was that Petitioner had a lengthy work history in the United States, as demonstrated by more than 20 years of tax

returns, which Petitioner had filed using an ITIN (Individual Taxpayer Identification Number). (Trans., ECF No. 13-2, at 13.) He was detained by ICE while at work, and testified that he intended to return to work (washing cars) if released. (*Id.* at 11–12.) Somehow, the IJ viewed Petitioner's long work history, decades of filing tax returns, and intent to return to the same work if released as a "significant flight risk factor[]." (*Id.* at 20.) However, a "history of working 'without authorization since entering the United States'" is not a reason to view Petitioner as a flight risk. "[B]y the immigration judge's reasoning, a noncitizen's unauthorized employment would essentially convert discretionary detention under Section 1226(a) to a de facto mandatory Section 1225 detention." *Gonzalez Reyes*, 2026 WL 2190830, at *5. Rather, "the Court agrees that 'no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not' and, to the contrary, 'steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed.'" *Id.* (quoting *Villa v. Mullin*, No. 5:26-CV-01690-JDE, 2026 WL 1583941, at *2 (C.D. Cal. June 2, 2026)); *see also Soriano*, 830 F. Supp. 3d at 1080–81 (finding that "the IJ abused his discretion when he denied Petitioner's bond request," noting that "the IJ provided no explanation as to why unlawful employment [even when] facilitated by the use of false Social Security numbers automatically weighs in favor of finding flight risk"). "Moreover, a noncitizen *without* any employment history is a factor that militates *against* release on bond because it would indicate the noncitizen is less likely to appear for removal proceedings." *Soriano*, 830 F. Supp. 3d at 1081 (citing *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020)) (emphasis added).

Petitioner's long history of employment and filing tax returns is bolstered by his strong community ties, which even the IJ found to be "significant." (Ans. Ex. C, at 8.) However, the IJ cast doubt on the stability of Petitioner's family life by noting that, while Petitioner "does reside at a fixed address, it is with his wife who

also has no status within the United States." (*Id.*) This seems to deliberately omit mention of evidence presented at the hearing that Petitioner and his wife also live with their high-school-age, United States citizen daughter, who is dependent on her father and appears to be suffering from severe psychological issues. (Trans., ECF No. 13-2, at 11, 16.) Further, simply noting that Petitioner lived at a "fixed address" does not capture the fact that Petitioner appears to have lived at the same address since 2009. (Trans., ECF No. 13-2, at 17.) Why a stable family life with his wife and dependent, minor U.S. citizen daughter at the same address for approximately seventeen years would make Petitioner a flight risk is not explained by the IJ.

Finally, the IJ also relied on the fact that the proposed immigration relief sought by Petitioner is "speculative." (Ans. Ex. C, at 8.) "Although an immigration judge may consider the likelihood of receiving relief based on specific facts presented in a particular case, the judge here did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case." *Gonzalez Reyes*, 2026 WL 2190830, at *5 (citing *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805); *see also Soriano*, 830 F. Supp. 3d at 1081 (finding that, while it might be rational to infer "that a noncitizen who likely faces inevitable removal may be less likely to appear at future removal hearings . . . based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case"). The *Soriano* court summarized the facts in that case as follows:

> Petitioner has been living in the United States approximately 25 years, has lived at the same address for the past 20 years, has been employed with the same employer for 25 years, appears to be in a stable relationship with his wife, has dependent United States citizen children, one of whom is approximately 13 years of age with vision issues requiring regular medical

> evaluations and school accommodations, has regularly volunteered in his community (*id*. at 101), and has no criminal history whatsoever.

*Soriano*, 830 F. Supp. 3d at 1081. The *Soriano* court found that the IJ had abused his discretion in denying the petitioner's bond request, noting, after summarizing the facts as set forth above, that "[t]he IJ provided no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." *Id.*

In addition, one important consideration was not discussed by the IJ either at the hearing or in the resulting order—that is, potential alternatives to detention. It was error for the IJ to find that the four factors discussed above "demonstrate a significant flight risk for which no bond is appropriate" (Ans. Ex. C, at 9) "without 'engag[ing] in any meaningful analysis of potential alternatives to detention, such as a GPS ankle monitor, home detention, enrollment in the Intensive Supervision Appearance Program ("ISAP"), or other reporting requirements as part of the flight risk calculus.'" *Heboud*, 2026 WL 2494985, at *6 (quoting *Felix v. United States DOJ*, No. 2:26-cv-03304-HDV-AYP, 2026 U.S. Dist. LEXIS 133657, at *3 (C.D. Cal. June 10, 2026)); *see also Espada Hernandez v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-CV-02231-AJR, 2026 WL 1362396, at *8 (C.D. Cal. May 11, 2026) (stating that, "even assuming Petitioner's eligibility for relief were speculative, this finding alone would not be sufficient to meet Respondents' burden of proof by clear and convincing evidence," and citing *Kumar v. Noem*, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, at *3 (E.D. Cal. Apr. 13, 2026), for the proposition that "at a minimum, it cannot be said that the limited availability of relief is evidence of flight that remotely approaches the clear and convincing standard the IJ purported to apply."). "Based upon the review of the bond hearing, the Court concludes that due process considerations have not been met as no serious

consideration was given to alternatives to detention, a necessary component of the due process analysis in the context of bond determinations." *Alvarez Felix v. United States Dep't of Just.*, No. 2:26-CV-03304-HDV-AYP, 2026 WL 1719418, at *2 (C.D. Cal. June 10, 2026).

The Court therefore finds that the IJ abused his discretion in finding that Petitioner was such a significant flight risk that no amount of bond could mitigate that risk. This determination was both "arbitrary, irrational, or contrary to law," *Pleitez-Lopez*, 935 F.3d at 719 (quotation omitted), and "fail[ed] to state its reasons and show proper consideration of all factors when weighing equities and denying relief," *An Na Peng*, 673 F.3d at 1253 (quotation omitted). The evidence presented was that Petitioner resided at a fixed address where he had lived since 2009; that he had lived in the United States continuously for approximately 25 years; that he lived with his wife and school-age, United States citizen daughter; that his relationship to his daughter could conceivably lead to Petitioner's permanent residency, even if the odds were very low; that he had worked steadily and paid taxes for decades and wanted to return to work after being released; and that he had strong community ties and a solvent sponsor in his church pastor, whom Petitioner had known for 18 years. Further, no evidence was presented that Petitioner had ever failed to appear at any court hearings, had any criminal record at all, had ever tried to flee prosecution or otherwise escape from authorities, or had any history of immigration violations other than entering or attempting to enter the country without permission more than 25 years ago. *See Martinez*, 124 F.4th at 783 (listing factors). Here, as in *Soriano*, it was an abuse of discretion to conclude that Petitioner was so likely to abandon his family and flee immigration authorities rather than appear in immigration court to pursue claims for relief from removal proceedings that no bond or alternatives to detention could suffice to ensure his appearance—especially in light of the failure even to discuss any such alternatives. *Soriano*, 830 F. Supp. 3d at 1080–81.

**D. <u>The Appropriate Remedy Is Release.</u>**

Having found that the IJ's decision was an abuse of discretion, the Court turns to the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Upon determining that an [immigration judge] provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Gonzalez Reyes*, 2026 WL 2190830, at *6 (quoting *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases)).

Here, the Court finds that the appropriate remedy is release. *See Gonzalez Reyes*, 2026 WL 2190830, at *7 (finding that the appropriate remedy was immediate release from custody). Petitioner has been in custody since December 4, 2025 and has already had three bond hearings. As the *Soriano* court stated, "[u]nder the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 830 F. Supp. 3d at 1081; *see also Gonzalez Reyes*, 2026 WL 2190830, at *7 (ordering Respondents to immediately release petitioner "subject only to narrowly tailored conditions of release no more restrictive than necessary").

In addition, the Court notes that Petitioner seeks "reasonable attorneys' fees, litigation expenses, and costs to the extent permitted by law." (Pet. 45.) Petitioner may seek fees and costs after judgment has been entered as provided by this Court's Local Rules and any applicable statute authorizing such an award.

## VI. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING the Petition; and
2. Respondents MUST RELEASE **Petitioner Sergio Poot (A 246-057-132)** from custody within 24 hours of entry of this Order, subject only to narrowly tailored conditions of release no more restrictive than necessary to ensure his appearance as required.

DATED: September 9, 2026

HONORABLE CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE